IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHANTE S., | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| FRANK J. BISIGNANO,[1] | : | |
| Commissioner of Social Security, | : | No. 22-04707 |
| Defendant. | : | |
| | : | |

**MEMORANDUM OPINION**

**PAMELA A. CARLOS**
**U.S. MAGISTRATE JUDGE**                                                                 **August 4, 2025**

Plaintiff Chante S. ("Plaintiff") appeals the Commissioner of Social Security's final decision to deny her claim for benefits. She contends that her intellectual disability meets the requirements of the Listing of Impairments, and that her treating psychiatrist submitted a Medical Source Statement which, if properly credited, would compel the conclusion that she is disabled. However, she argues that the Administrative Law Judge's ("ALJ") analysis was erroneous in several respects. First, she argues that the ALJ entirely failed to analyze Section 12.05B of the Listing of Impairments and improperly rejected findings concerning her IQ scores. According to Plaintiff, the ALJ found her IQ scores were not reliable based on nothing more than "speculative inferences" drawn from the record—not from objective medical evidence. Next, Plaintiff argues that the ALJ improperly rejected the medical opinion of her treating psychiatrist, Nohazarahit Garcia, M.D., by mischaracterizing the limitations assessed by Dr. Garcia, and by ignoring the supporting explanations provided by Dr. Garcia throughout the opinion.

---

[1] Frank J. Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The Commissioner disagrees, arguing that the ALJ's analysis was appropriate under the governing regulations. The Commissioner concedes that the ALJ did not explicitly identify Listing 12.05B in the Decision. However, the Commissioner emphasizes that the Listings are merely a regulatory device used to streamline the decision-making process, and Listing 12.05B is only met if a claimant meets the criteria of all three of its subsections. In this instance, Plaintiff has failed to carry her burden, and the ALJ's findings are amply supported by substantial evidence. In other words, the ALJ's failure to identify the listing by name is at most harmless error. Finally, the Commissioner argues that the ALJ adequately explained why Dr. Garcia's medical opinion was not persuasive, and Plaintiff's "articulation" arguments must be rejected as nothing more than an improper request for the Court to reweigh the evidence. Given this, the Commissioner argues that the ALJ's decision must be affirmed.

For the reasons that follow, I will affirm the Commissioner's decision, and Plaintiff's request for review is denied.

I.   BACKGROUND

   A.   **Factual and Procedural History.**

Plaintiff was born in January 1984, and was therefore 37 years old as of the date of the ALJ's Decision R.192. She completed high school with special education services, *see* R.52-53, and previously worked as a shuttle bus driver. R.36.

In May of 2020, Plaintiff filled applications for a period of Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging she became unable to work due to disabling conditions on March 20, 2020. R287-302. These claims were initially denied on February 17, 2021, and upon reconsideration on May 11, 2021. R.207-22, 225-34. Plaintiff then requested a hearing before an ALJ, *see* R.236-36, and a hearing was held on October 13, 2021, *see* 97-150

("hearing transcript"). After the hearing, the ALJ issued a written decision on November 1, 2021 denying Plaintiff's claim. R.21-42 ("ALJ Decision"). The Appeals Council denied Plaintiff's subsequent request for review, meaning the ALJ's written opinion became the final decision of the Commissioner. R.1-7. Plaintiff now timely appeals.[2]

    **B.**    **ALJ's Decision.**

The ALJ evaluated Plaintiff's claims using the five-step sequential analysis set forth in the Social Security regulations.[3] Beginning at step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since March 20, 2020. R.26.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: major depressive disorder, post-traumatic stress disorder ("PTSD"), anxiety disorder, learning disorder, and intellectual disability. R.26 (citing 20 CFR 404.1520(c) and 416.920(c)). The ALJ further noted that the medical evidence of record also references a diagnosis of alcohol use disorder in sustained full remission during the relevant period, and the observation that Plaintiff was diagnosed with various eyesight disorders. R.27 (citations omitted). However, the ALJ explained that there is no evidence of any specific limitations arising out of these conditions, and the lack of treatment suggests that these conditions were sporadic or acute in nature. R.27.

Moving on to step three, the ALJ concluded that none of Plaintiff's impairments alone, or in combination, met or medically equaled the requirements of the impairments listed in the

---

[2]     The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C § 636(c). *See* ECF Doc. No. 12.

[3]     The sequential analysis requires the ALJ to evaluate (1) whether claimant's work, if any, qualifies as "substantial gainful activity"; (2) whether the claimant's medically determinable impairments are severe; (3) whether any of the claimant's impairments "meet or equal the requirements for impairments listed in the regulations"; (4) whether the claimant is able to perform "past relevant work" considering her residual functional capacity; and (5) whether the claimant can adjust to other work considering her residual functional capacity, age, education, and work experience. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201-202 (3d Cir. 2019) (citing 20 C.F.R. § 416.920(a)(4)(i)-(v)). The claimant has the burden of proof at steps one through four, and then at step five, the burden shifts to the Commissioner of Social Security. *Id.* at 201.

3

regulations. R.27-29 (considering Listings 12.04, 12.06, 12.11, and 12.15). In doing so, the ALJ considered whether the "paragraph B" criteria were satisfied, which requires evidence establishing that Plaintiff's mental impairments result in one "extreme" limitation or two "marked" limitations in a broad area of functioning. R.27. Specifically, the ALJ concluded that Plaintiff had only "moderate" limitations in each of the four areas: (1) understanding, remembering, or applying information; (2) interacting with others, (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. R.27-29.

As relevant to the instant appeal, the ALJ acknowledged that Plaintiff had memory issues. During her consultative examination, Plaintiff had difficulty recalling details about her past history, and she struggled to recall objects after a delay. R.27-28. The ALJ further noted that Plaintiff achieved a full-scale IQ score of 51 when her examiner administered the Wechsler Adult Intelligence Scale, Fourth Edition ("WAIS-IV"). R.28. However, the ALJ noted that Plaintiff, by her own statements and actions, demonstrated that she can help care for her son, perform her own grooming and hygiene, prepare simple meals, shop with her son for food and clothing, and watch TV. R.28 (citations omitted). The ALJ explained that given Plaintiff's prior work as an "express park driver," it was clear that she has the cognitive functioning to drive and follow basic motor vehicle laws and guidelines. R.28. Indeed, the ALJ observed that despite Plaintiff's presentation and clinical findings during her consultative examination, objective findings on mental status examinations have described her immediate, recent, and remote memory as adequate. R.28 (citation omitted). As such, the ALJ found that Plaintiff had only a "moderate" limitation in understanding, remembering, or applying information. R.28.

The ALJ reached a similar conclusion with respect to adapting or managing oneself. R.29. Despite Plaintiff's allegations that she has difficulty handling stress, handling changes in routine,

4

and managing her mood, the ALJ again noted that Plaintiff was able to independently manage several of her affairs, including helping her son with his online education. R.29. Given the totality of the evidence, the ALJ found only a moderate limitation in this area of functioning. R.29.

Before reaching step four, the ALJ considered Plaintiff's RFC.[4] After reviewing the objective medical evidence and the subjective opinions in the record, the ALJ determined that Plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels," but with several nonexertional limitations. R.29. The ALJ explained that Plaintiff "can perform simple, routine, and repetitive tasks, but not at a production rate pace." R.29. The ALJ further noted that "[s]he can make simple work related decisions, and she can occasionally interact with supervisors, coworkers, and the public," and can "tolerate occasional changes in work setting." R.29.

In reaching this determination, the ALJ considered Plaintiff's symptoms, the medical evidence of record, and her subjective complaints. R.30-36. As relevant to the instant appeal, the ALJ also considered the opinion of Plaintiff's treating psychiatrist, Dr. Garcia, which she ultimately found to be not persuasive. R.35. Specifically, the ALJ observed that Dr. Garcia indicated that Plaintiff had "marked" limitations in remembering information, applying information, maintaining pace, and adapting in the workplace. R.35. Dr. Garcia further indicated that Plaintiff's mental disorder is "serious and persistent" and that she relies on ongoing medical treatment, mental health therapy, psychosocial support, or a highly-structured setting to diminish her symptoms. R.35. However, the ALJ characterized these limitations are "extremely overstated" because they were not consistent with Dr. Garcia's own treating records. R.35. As the ALJ had

---

[4]   Residual functional capacity, or RFC, is defined as "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1).

discussed earlier in the Decision, the treating records showed very little documentation of treatment and Plaintiff's mental status examination findings were generally within normal limits but for Plaintiff's depressed mood. R.35 (citations omitted). Given this, together with Plaintiff's ability to engage in several activities of daily living, the ALJ concluded that Dr. Garcia's opinion was not persuasive. R.35.

The ALJ also considered the opinion of Arletha Kirby, Ph.D., who completed Plaintiff's mental status and intelligence consultative examination, and who administered the above-referenced IQ test. R.35. The ALJ observed that Dr. Kirby opined that Plaintiff's mental impairments resulted in no more than "moderate" limitations, despite Plaintiff's full-scale IQ score of 51. R.35. The ALJ explained that this opinion was "somewhat persuasive," because it was generally consistent with Plaintiff's minimal, routine, and conservative treatment record. R.35. The ALJ further explained that she does not find Plaintiff's IQ scores to be consistent with her past work or her activities of daily living. R.35.

At step four, the ALJ found that given Plaintiff's RFC, she could not perform any past relevant work. R.36. The ALJ then proceeded to step five and identified multiple jobs in the national economy that Plaintiff could perform, including automobile detailer, cleaner, and commercial cleaner. R.36-37. As such, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act ("SSA"). R.37-38.

## II.   STANDARD OF REVIEW

Judicial review of a social security disability determination is "limited." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The agency's factual findings are "conclusive," and therefore must be upheld, if they are supported by "substantial evidence." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (citing 42 U.S.C. § 405(g)). Substantial evidence is not a demanding standard. *Id.* at 1154. All it means is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1153 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford*, 399 F.3d at 552 (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). In applying this deferential standard of review, the Court "must not substitute [its] own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford*, 399 F.3d at 552). In other words, the Court must not re-weigh the evidence before the ALJ, but instead must assess whether substantial evidence supports the ALJ's findings. *See Chandler* v. *Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations.").

In doing so, the Court determines whether the ALJ's decision "meets the burden of articulation demanded by the courts to enable informed judicial review." *Kenyon v. Saul*, 2021 WL 2015067, at *5 (M.D. Pa. May 19, 2021). In this regard, the ALJ need not "employ particular 'magic' words" or "adhere to a particular format in conducting his analysis." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (quoting *Jones v. Barnhart,* 364 F.3d 501, 505 (3d Cir. 2004)). The Court requires—at the very least—that the ALJ "set forth the reasons for [their] decision." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000).

### III.   DISCUSSION

#### A.   The ALJ's failure to analyze whether Plaintiff's disability met or medically equaled the requirements of Listing 12.05 amounts to harmless error.

Plaintiff argues first that the ALJ erred in failing to find that her intellectual disorder meets the requirements of Section 12.05B of the Listing of Impairments. *See* Doc. No. 3 at 4-12. Section 12.05B reads as follows:

> B. Satisfied by 1, 2, and 3 (see 12.00H):
>
> 1. Significantly subaverage general intellectual functioning evidenced by a or b:
>
>   a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>
>   b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
>
> 2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>
>   a. Understand, remember, or apply information (see 12.00E1); or
>
>   b. Interact with others (see 12.00E2); or
>
>   c. Concentrate, persist, or maintain pace (see 12.00E3); or
>
>   d. Adapt or manage oneself (see 12.00E4); and
>
> 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, §12.5B. Against this framework, Plaintiff maintains that all three subsections delineated above were satisfied.

First, Plaintiff emphasizes that Dr. Kirby, the consultative examiner who administered the WAIS-IV test, found that her full scale IQ score of 51 was a "valid and reliable estimate of current functioning." *See* Doc. No. 13 at 6 (citing R.418) (emphasis in briefing). However, rather than

8

crediting Dr. Kirby's assessment, Plaintiff argues that the ALJ "never even mentioned that opinion in her decision," and instead "drew her own lay conclusion that the IQ scores found by Dr. Kirby were not valid, stating that Plaintiff 'is capable of engaging in a range of activities of daily living that contradict her IQ scores…'" *See id.* at 7 (quoting R.34). Plaintiff maintains that this conclusion is erroneous as a matter of law under the governing regulations. *See id.* at 7-8. Absent any contrary medical evidence, Plaintiff argues that the ALJ's rejection of Dr. Kirby's report "improperly substituted her lay opinion for the expert judgment of Dr. Kirby." *See id.* at 8-9 (citing *Van Horn v. Schweiker*, 717 F.2d 871, 874 (3d Cir. 1983); *Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000)). Indeed, Plaintiff argues that the various activities that she is able to engage in or complete are not inconsistent with her low IQ scores, and therefore, the ALJ committed the same reversible error as that identified by the Third Circuit Court of Appeals in *Markle v. Barnhart*, 324 F.3d 187 (3d Cir. 2003). *See id.* at 10-11.

Next, Plaintiff argues that subsection three identified above was also met because she began special education classes in elementary school, and her intellectual disorder had its onset during her developmental period. *See id.* at 11 (citing R.52-53, 346). This alone satisfies her burden because the Commissioner has made clear that claimants are not required to produce evidence of intelligence testing before age 22. *See id.* at 12, n.3.

Finally, Plaintiff insists that had the ALJ properly understood her performance on the WAIS-IV as "valid and reliable," she would not have failed to consider the application of Section 12.05 of the Listing of Impairments. *See id.* A proper analysis, according to Plaintiff, would have compelled the conclusion that her combined mental impairments caused "marked" limitations in her abilities to (1) understand and apply information, and (2) adapt or manage herself, as her treating psychiatrist opined. *See id.*

It is evident that the ALJ did not explicitly identify Listing 12.05 in her analysis, and the Commissioner acknowledges as much. *See* Doc. No. 16 at 8. But this alone does not warrant remand. As the Commissioner correctly explains, Listing 12.05 "is satisfied only if the claimant meets the criteria of *all three subsections*." *See id.* at 6 (emphasis in original). In this regard, Plaintiff's repeated focus on her IQ scores—and the ALJ's alleged errors in rejecting the same—is only part of the analysis. Upon review of the disputed Decision, it is clear that the ALJ considered Plaintiff's functioning in the relevant four areas and cogently explained why Plaintiff had only "moderate" limitations in each. R.27-29. These explanations are supported by more than a "mere scintilla of evidence," s*ee Chandler*, 667 F.3d at 359, including that Plaintiff could independently complete several activities of daily living, Plaintiff previously held a job that required that she follow basic motor vehicle laws and guidelines, and that Plaintiff's objective findings on mental status examinations described her immediate, recent, and remote memory skills as adequate.[5] In other words, even if I assumed, without deciding, that the ALJ improperly omitted Listing 12.05B[6] and improperly discredited the reliability of Plaintiff's IQ score, the same result

---

[5] Notably, Plaintiff does not directly challenge these observations made by the ALJ. In other words, she does not dispute that there is evidence in the record to support the ALJ's findings concerning these specific items, which are indicative of her ability to function. At most, Plaintiff argues that nothing about her ability to complete certain activities of daily living, or her ability to hold a prior job, is inconsistent with intellectual disability, and therefore, the ALJ erred to the extent she suggested Plaintiff's IQ scores were not reliable. *See* Doc. No. 13 at 10-11.

However, the ALJ was not required to conclude that Plaintiff had "marked" or "extreme" limitations in functioning based *solely* on very low IQ scores. Rather, Section 12.05B makes clear that claimants must not only have IQ scores below a certain threshold (i.e., 70), but also must have "marked" limitations in at least two areas of functioning (or an "extreme" limitation in at least one). In this instance, and as explained further below, the very doctor who administered Plaintiff's IQ test, and who attested to the reliability of the scores, nevertheless found that Plaintiff had only "moderate" limitations. In other words, like Plaintiff suggests, there is nothing inconsistent about having a low IQ score, but still having the ability to function independently.

[6] The Commissioner correctly explains that the ALJ's failure to identify Listing 12.05B by name in the analysis does not alone constitute reversible error. *See* Doc. No. 16 at 8-9. Our court of appeals has long held that an ALJ need not use "particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505. Rather, the record must be sufficiently developed and the ALJ must provide sufficient explanation of their findings to permit meaningful judicial review. *See id.* Consistent with this principle, the Third Circuit has explained in several non-precedential opinions that "[w]e have never required an administrative law judge to identify or analyze the most relevant listing." *Wisniewski v. Comm'r of Soc. Sec.*, 210 F. App'x 177, 180 (3d Cir. 2006); *see also Mann v. Comm'r Soc. Sec. Admin.*, 638 F. App'x 123, 126 (3d Cir. 2016) (affirming the ALJ's decision that claimant did not meet the

is reached—i.e., the ALJ's conclusion that Plaintiff has only "moderate" limitations in each area of functioning is supported by substantial evidence.

In her Reply, Plaintiff argues that the ALJ's failure to consider whether she met the requirements of Listing 12.05 cannot constitute "harmless error," because "it is clear that there is a set of facts on which Plaintiff could recover," as set forth in her opening brief. *See* Doc. No. 17 at 3-5. Plaintiff emphasizes further that the Third Circuit disapproves of the very sort of speculation that the ALJ here engaged in with respect to her IQ scores. *See id.* at 5. She explains, "[t]he ALJ, who did not even mention Dr. Kirby's opinion of validity, was not permitted to reach a contrary conclusion based solely on her own reasoning under the regulations." *See id.* Indeed, she argues that the Commissioner "offers no rebuttal to this point, essentially conceding that Plaintiff is correct." *Id.*

But these arguments are unconvincing, and Plaintiff's emphasis on the reliability of her IQ scores is misplaced. The ALJ analyzed Dr. Kirby's opinion throughout her Decision and explained that Dr. Kirby opined that Plaintiff's mental impairments result in "no more than moderate limitations." R.35 (citing Ex. B3F/9-10). The ALJ found the opinion to be "somewhat persuasive" because it was "generally consistent with [Plaintiff's] minimal, routine, and conservative treatment record." R.35 (citing Exs. B1F and B6F). Indeed, the ALJ specifically observed that "even though Dr. Kirby's WAIS-IV administration resulted in a full-scale IQ score of 51, Dr. Kirby did not limit the claimant to the level one would expect given the score." R.35. In other words, Plaintiff's argument is untenable. On the one hand, Plaintiff maintains that the ALJ was required to credit Dr. Kirby's opinion concerning the reliability of the IQ scores, but on the other hand, Plaintiff

---

relevant listings, including Listing 1.07, which was not identified by name, because the decision when "read as whole, illustrates that [the ALJ] determined that the appropriate factors of [claimant's] disability did not meet *any* of the listed impairments…") (emphasis in original).

completely ignores the remainder of the opinion, which concluded that she had only "moderate" limitations in functioning, and therefore cannot meet the requirements of Listing 12.05.

In short, the ALJ's failure to identify Listing 12.05B by name was, at most, harmless error. Plaintiff's request for review with respect to this argument is denied.

> **B.** **The ALJ's analysis of the medical opinion of Plaintiff's treating psychiatrist is supported by substantial evidence.**

Plaintiff argues next that the ALJ also committed reversible error by rejecting the opinion of Plaintiff's treating psychiatrist, Dr. Garcia, without an adequate explanation. *See* Doc. No. 13 at 13-18. She explained that she was treated for her psychiatric impairments at Omni Health Services ("Omni"), and that on July 22, 2021, Dr. Garcia completed a Medical Source Statement:

> in which she opined that [Plaintiff's] impairments caused signs and symptoms including depressed mood, diminished interest in almost all activities, sleep disturbance, decreased energy, feelings of guilt, difficulty concentrating or thinking, panic attacks, frequent distractability [sic], difficulty sustaining attention, and difficulty organizing tasks, irritability, detachment from social relationships, disorganized thinking, and significant difficulties learning and using academic skills.

*See id.* at 14-15 (citing R.449) Given this, Dr. Garcia opined that Plaintiff's impairments caused "marked" limitations in her ability to (1) remember and apply information, (2) maintain pace, and (3) adapt in the workplace. *See id.* (R.450).

Despite this, Plaintiff notes that the ALJ found Dr. Garcia's opinion to be "not persuasive" for erroneous reasons. First, Plaintiff argues that the ALJ mischaracterized the limitations assessed by Dr. Garica as "extremely overstated," when in reality Dr. Garcia found no "extreme" limitations at all. *See id.* at 16 (citing R.450). Next, Plaintiff maintains that "Dr. Garcia provided extensive explanations for her opinion, but the ALJ failed to address those supported explanations at all in her decision." *See id.* And last, Plaintiff argues that the ALJ failed to recognize that Dr. Garcia's opinion was consistent with Dr. Kirby's findings regarding her intellectual disability. *See id.* at 17.

There is no merit to Plaintiff's contentions. As noted above, the ALJ discussed Plaintiff's treatment records throughout the Decision. The ALJ then specifically observed that these records showed little documentation of treatment and demonstrated that Plaintiff's mental status examination findings were generally within normal limits but for Plaintiff's depressed mood. R.35 (citations omitted).[7] The ALJ further noted that Plaintiff was able to engage in several activities of daily living, all of which suggested a higher degree of functioning than that found by Dr. Garica. R.35 These explanations are supported by more than a "mere scintilla of evidence." *See Chandler*, 667 F.3d at 359.

Ultimately, the Court's review on appeal is limited, and upon undertaking that responsibility, I find that Plaintiff's arguments concerning the ALJ's analysis of Dr. Garcia's opinion asks the Court to improperly re-weigh the evidence. The Court declines such an invitation and finds that the ALJ's explanations are amply supported by substantial evidence.

---

[7] The undersigned observes that the medical records from Omni are quite limited. Yet, of these limited materials, the ALJ fairly characterized the treatment records as demonstrating mental status examination findings as within the "normal range." For example, in a psychiatric re-evaluation dated July 22, 2021, Plaintiff was noted as being "alert," she had "goal directed" thought processes, she was "cooperative," and there was "no evidence of impairment" with respect to concentration and attention. R.472. Indeed, these notes revealed "adequate" memory with respect to the immediate, recent, and remote past. R.472. Similar findings were observed in an earlier evaluation dated March 27, 2019. R.394. Likewise, in a mental status exam from April 2016, Plaintiff was again described as "cooperative," she had no delusions, she had "normal" insight, and "fair" judgment. R.468.

Given this, the ALJ reasonably concluded that several of Dr. Garcia's noted limitations were "extremely overstated"—not because Dr. Garcia explicitly identified "extreme" limitations, but because the limitations she did identify were not supported by the treatment records. For example, Dr. Garcia noted a "marked" limitation in "remembering information," *see* R.450, even though Plaintiff's mental status examinations showed "adequate" memory with respect to the immediate, recent, and remote past. *See* R.472 (noting the checkbox options for memory included adequate, fair, and impaired). Dr. Garcia also noted a "moderate" limitation in concentrating, even though the mental status examinations showed "no evidence of impairment" with respect to concentration and attention. *Compare* R.450 *with* R.394, 472. This internal inconsistency supports the ALJ's conclusion that the opinion was not persuasive.

## IV.     CONCLUSION

For the reasons explained above, Plaintiff's request for review is **DENIED**. The Court finds that the ALJ's decision was supported by substantial evidence. As such, the final decision of the Commissioner of Social Security is **AFFIRMED,** and this matter is **DISMISSED.** An appropriate Order follows.

BY THE COURT:


*s/Pamela A. Carlos*
PAMELA A. CARLOS
U.S. Magistrate Judge